**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

SAMUEL WALTON,

Plaintiff,

-vs-

SAM DIBBLE, MATTHEW KIMBALL, and MERLE WHEELER,

Defendants.

**REPORT and RECOMMENDATION**

24-CV-6242-EAW-MJP

## INTRODUCTION

**Pedersen, M.J.** Presently before me is the issue of whether plaintiff Samuel Walton ("Plaintiff") exhausted his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 110 Stat. 1321–73, as amended, 42 U.S.C. § 1997e(a) 1994 ed., Supp. V) prior to commencing this federal action. I conducted an evidentiary hearing on May 12, 2026, during which Sam Dibble, Matthew Kimball, and Merle Wheeler (collectively "Defendants") called two witnesses as follows: Mandi Schultz, Inmate Grievance Program Supervisor at Five Points Correctional Facility ("Five Points") and Rachel Seguin, Director of the Incarcerated Grievance Program. Plaintiff testified on his own behalf.

After conducting the hearing and considering the evidence presented, I report and recommend that Defendants have not met their burden of demonstrating, by a preponderance of the evidence, that Plaintiff failed to exhaust his administrative remedies.

## BACKGROUND

Plaintiff testified that on April 30, 2021, corrections officers assaulted him while he was incarcerated at Five Points. (Transcript of Evidentiary Hearing held on May 12, 2026 ("Tr.") at 106:5–109:3, ECF No. 59.) Plaintiff further testified that he sustained three broken ribs "and a busted face" as a result of the alleged assault. (*Id.* at 109:4–9.)

Between 2014 and 2023 Plaintiff wrote and appealed at least 16 grievances all the way to the Central Office Review Committee ("CORC") level. (*Id.* at 81:13–22; 85:8–11; 161:13–21; Def. Ex. 5.[1]) Plaintiff testified that he was familiar with the grievance process at Five Points and that he was also familiar with Directive 4040 promulgated by the Department of Corrections and Community Supervision ("DOCCS").[2] (*Id.* at 113:9–23; 114:13–16.) He further testified that he appealed "a lot" of grievances up to the CORC level and that he had appealed nine grievances to the CORC level while housed at Five Points. (*Id.* at 114:10–12; 132:20–133:3; Def. Ex. 5.) Ms. Seguin confirmed that Plaintiff appealed nine grievances while housed at Five Points. (*Id.* at 85:16–18; 98:7–20; Def. Ex. 5.) She further agreed with Plaintiff's

---

[1] Ms. Seguin testified that Defense Exhibit 5, which is a list of all of Plaintiff's appeals at CORC, depicts 17 grievance appeals but I count 16 and under the first column labelled "Case Number" the first entry says "Count=16". She later testified, when again referring to Defense Exhibit 5, that "[a]s of June 14th, [sic] 2024, there was [sic] a total of 17" grievances Plaintiff appealed to CORC. (*Id.* at 85:8–11.) However, there is no reference to "2024" in that document as the latest dates I can see are from 2023. (Defense Ex. 5.)

[2] Ms. Schultz testified that DOCCS Directive 4040 is the "inmate grievance directive." (*Id.* at 12:20–24.)

counsel that it was clear from Defense Exhibit 5 that Plaintiff knew how to navigate the grievance and appeal processes. (*Id.* at 98:21–24.)

Plaintiff submitted a grievance regarding the assault on May 17, 2021, at Five Points. (*Id.* at 110:4–20.) He testified that he handed his grievance to his neighbor and asked him to file it because Plaintiff was moved into the Special Housing Unit "("SHU") after the incident and he was having issues with his mail. (*Id.* at 109:10–24; 110:21–25.) Plaintiff testified that his grievance came back to him "[a] few days later" in the mail with "decline and return" written at the top. (*Id.* at 111:5–10; 117:17–21; Pl.'s Ex. 1.)[3] The next day Plaintiff wrote a letter to the Incarcerated Grievance Resolution Committee ("IGRC") indicating that he would like to submit the grievance. (*Id.* at 112:15–113:3; 135:3–9.) He gave the letter and grievance to his neighbor and asked him to mail it. (*Id.* 113:4–8.) Plaintiff testified that about a month or two after he submitted his grievance he received correspondence informing him that it was denied. (*Id.* at 115:3–13.) He testified that he had written Ms. Schultz, the Inmate Grievance Program Supervisor at Five Points, "numerous letters inquiring about [his] grievance and the status of [his] appeals and [he] finally got a response saying it was denied." (*Id.* at 115:22–116:12; 135:22–136:2.) Plaintiff testified that he never saw Defense Exhibit 3, which is the response of the IGRC denying Plaintiff's grievance, dated July 1, 2021. (*Id.* at 117:22–25; 138:17–139:4; 159:24–160:9; Def. Ex. 3.) Plaintiff further testified that he was not the person who checked the box on the

[3] Ms. Schultz testified that the handwriting at the top of Plaintiff's grievance that says "decline and return" was neither hers nor Plaintiff's handwriting and she did not know who wrote those words. (*Id.* at 37:21–38:8; Pl.'s Ex. 1.)

bottom portion of Defense Exhibit 3 with language next to the box stating "disagree with IGRC response and wish to appeal to the superintendent." (*Id.* at 138:17–22; Def. Ex. 3.) Plaintiff testified that, in connection with this grievance, he never attended a grievance hearing, was not informed that a hearing was being held, and was not told he would have the opportunity to be present at a hearing. (*Id.* at 116:23–117:8.)

Ms. Schultz testified that she reviews all of the incoming grievances, processes them, assigns them a code, and then provides them to different areas for investigation. (*Id.* at 7:3–22.) She testified that Plaintiff was familiar with the grievance process having filed grievances while incarcerated. (*Id.* at 53:9–21.) She further testified that Plaintiff sent the grievance to the Inmate Grievance Program ("IGP") office at Five Points in May and it was received and filed in the beginning of June 2021. (*Id.* at 9:14–23; 34:9–35:3.) The grievance number is FPT-0862-21. (*Id.* at 10:8–15; Def. Ex. 3.)

Ms. Schultz testified that when the IGP office received Plaintiff's grievance on May 17, 2021, it was not logged into their system right away because the grievance contained allegations of staff misconduct and such grievances must first be forwarded to the superintendent to determine if it would be considered a code 49, or staff misconduct grievance. (*Id.* at 34:9–35:3; 35:7–36:7; 75:11–20.)[4] On May 25, 2021, the

[4] Ms. Schultz testified that a grievance in which an inmate accuses staff members of misconduct would be considered a code 49. (*Id.* at 35:14–15.) Additionally, Ms. Seguin testified that a claim for excess use of force would "fall under staff conduct that would be designated what we call code 49 which is the code that we use for staff misconduct complaints." (*Id.* at 75:11–16.) She further testified that it was "[m]ore than likely" that anytime an inmate accuses a staff member of assaulting him it would be considered a code

IGP office sent the grievance to the superintendent to obtain code 49 clarification. (*Id.* at 39:23–40:5.) On May 26, 2021, the superintendent or his/her designee signed a form indicating that the grievance did not qualify as a code 49. (*Id.* at 42:8–14; 43:4–24; Pl.'s Ex. 2.) Ms. Schultz testified that the superintendent would have returned the form either on May 26, 2021, or "within a few days at least." (*Id.* at 42:15–18.) The grievance was then filed on June 8, 2021. (*Id.* at 30:15–18; 43:19–25; Def. Ex. 4.)[5] Defense Exhibit 4 indicates, and Ms. Schultz testified, that the IGRC held a hearing on July 1, 2021. (Def. Ex. 4; Tr. at 44:25–45:8.) Ms. Schultz testified that Plaintiff had a right to be present at the hearing but that she did not know if Plaintiff actually was present at the hearing. (Tr. at 45:25–47:6.)

The IGRC denied the grievance on July 1, 2021. (*Id.* at 9:24–10:23; 47:9–13.) Ms. Schultz testified that Defense Exhibit 3, the IGRC's denial of Plaintiff's grievance, was sent to Plaintiff via internal mail on July 1, 2021. (*Id.* at 11:6–15; 47:14–48:7.) Ms. Schultz testified that the only reason she could say that the IGRC's response denying the grievance was sent to Plaintiff was because that is what should have been done; there was no notation or other record indicating that it was sent to Plaintiff and she could not say for sure whether Plaintiff saw it. (*Id.* 47:24–48:13; 50:16–23.) Plaintiff did not appeal the grievance to the superintendent within 7 days, which is the time allotted for such an appeal. (*Id.* at 12:14–21; 162:19–163:9.) Ms.

49. (*Id.* at 91:22–25.) She also testified that she could not think of any circumstances under which Plaintiff's allegations of staff misconduct in the grievance at issue would not qualify as a code 49. (*Id.* at 93:24–94:6.)

[5] Ms. Schultz testified that Defense Exhibit 4 is a copy of the Five Points IGP office's grievance log for Plaintiff. (*Id.* at 20:22–14; 22:16–24.)

Schultz testified that the IPG office received the IGRC's denial back from Plaintiff on November 3, 2021, but that Plaintiff neither signed nor dated it. (*Id.* at 10:6–13:4; 14:2–23; 48:24–49:5; 50:2–5.) Ms. Schultz testified that incarcerated individuals are required to sign and date the appeal portion of the IGRC response so that the IGP office knows that the incarcerated individual is the one who wants to appeal it and that he has appealed it in a timely manner. (*Id.* at 12:5–17; 58:15–59:3; *see also,* testimony of Rachel Seguin, Director of Incarcerated Grievance Program: "An incarcerated individual has 7 calendar days from receipt of the IGRC response to submit an appeal. So the date that they sign [sic] when they are signing and dating it is letting us know if it's within that time frame." *Id.* at 70:11–18.)

Ms. Schultz testified that the grievance clerk printed the cover sheet on November 3, 2021, to send the grievance appeal to the superintendent but then realized that the IGRC response form was not signed or dated and it was sent back to Plaintiff to sign and date it that same day. (*Id.* at 16:6–17:12.) The grievance clerk also signed the IGRC response form but did not date it and Ms. Shultz testified that it should have been dated by the clerk. (*Id.* at 54:7–55:5.) Ms. Schutlz testified that because the grievance clerk signed the IGRC response form this meant that Plaintiff returned the form. (*Id.* at 13:6–11.)

Ms. Schultz further testified that she did not receive any other documents from Plaintiff after she sent the IGRC response form back to him and she knows this because the IGP office would have processed any such documents and forwarded them to the superintendent. (*Id.* at 17:20–23; 20:4–12; 52:5–15.) Ms. Schultz also testified

that if an incarcerated individual wrote to the superintendent asking about a grievance appeal that "[u]sually the superintendent will send it to our office to inquire about it" and the IGP office did not receive anything from the superintendent regarding grievance number 862. (*Id.* at 25:5–16.)

Further, defense counsel asked Ms. Schultz about Defense Exhibit 4, which Ms. Schultz testified was a grievance log showing five grievances Plaintiff filed when he was at Five Points, including, in the first row, grievance number "862" at issue here. (*Id.* at 20:18–21:14; 22:13–24; 23:21–24:4.) She testified that of the five grievances, Plaintiff appealed one all the way through CORC and he did not appeal the other four, including grievance number 862, after the IGRC's response. (*Id.* at 22:25–24:8.)

Plaintiff was transferred to Auburn Correctional Facility ("Auburn") on July 6, 2021, and he testified that he "immediately [ ] wrote [to Five Points's] superintendent and [ ] C.O.R.C. [indicating that he] would like to appeal [and] wanted to know the status of [his] appeal." (*Id.* at 118:16–119:20; 139:5–21; Defense Ex. 7.)[6] Plaintiff testified that within a week or so of arriving at Auburn he also wrote to Ms. Schultz saying he wanted to appeal his grievance and asking about the status of his appeal. (*Id.* at 118:23–119:20; 139:14–21.) He mailed these letters from Auburn by placing them in the mailbox. (*Id.* at 119:24–102:3; 142:2–11.) He testified that he did not receive responses to those letters. (*Id.* 120:4–6.)

---

[6] Defense Exhibit 7 is a list of Plaintiff's movement data between different correctional facilities.

Plaintiff returned to Five Points on August 11, 2021, and testified that he again wrote letters in September 2021 to Ms. Schultz, the superintendent, and CORC indicating that he wanted to appeal and asking about the status of his appeal. (*Id.* at 120:18–121:7; 144:10–145:2.) He sent this correspondence through the mail. (*Id.* at 145:3–4.)[7] He did not receive responses from the superintendent or CORC (*Id.* at 121:8–11.) Plaintiff further testified that he received a response from Ms. Schultz. (*Id.*) Plaintiff brought copies of two pieces of correspondence he received from Ms. Schultz, which were marked as Plaintiff's Exhibits 3 and 4. (*Id.* at 121:17–9; 123:2–124:15.) Exhibit 3 is dated September 17, 2021, and is a typed communication from "M. Schultz, IGPS" to "Walton, S. 14A2215/12-A1-24B" with a subject line of "grievance." (*Id.* at 123:2–16; Pl.'s Ex. 3.) The communication reads as follows:

> Attached is a list of the grievances I have on file for you. You were sent responses to all of them. I checked with Auburn and she had nothing on file for you.

(Pl.'s Ex. 3.) Plaintiff's Exhibit 4 is dated September 27, 2021, and is a typed communication from "M. Schultz, IGPS" to "Walton, S 14A2215/12-A1-24B" with a subject line of "grievance." (Tr. at 124:3–13; Pl.'s Ex. 4.) Plaintiff's Exhibit 4 reads as follows:

> I never received your staff misconduct grievance. You may resubmit it. I would not be able to accept an appeal for a grievance that you claim to not have received the response for. When you didn't receive a response, you could have appealed it as untimely.

---

[7] During Plaintiff's testimony, defense counsel pointed out that Plaintiff previously testified at his deposition that he handed these letters to an officer. (*Id.* 145:25–146:16.)

(Pl.'s Ex. 4.) Plaintiff testified that those two pieces of correspondence are related to the grievance at issue in this matter but they do not reference the grievance number. (Tr. at 149:15–19; Pl.'s Ex. 3 & 4.) Plaintiff submitted these two communications from Ms. Schultz to demonstrate that there were communications between Plaintiff and Ms. Schultz. (Tr. 126:8–14.)[8] Ms. Schultz testified that she did not receive any mail from Plaintiff in August or September, or ever, asking about his appeal. (*Id.* at 24:18–25:2.) She also testified that she did not have any correspondence from Plaintiff in the IGP's file and that they keep copies of any letters received from incarcerated individuals. (*Id.* at 53:6–8; 55:11–18.)

Ms. Seguin testified that the

> Central office for DOCCS has what is called a correspondence tracking system. It's a system that is used for all offices that are located within DOCCS Central Office, so any mail that is received from an incarcerated individual, including mail that would be sent to the CORC that is inputted into the correspondence tracking system. And then we would respond to that correspondence, and a copy of the response would be added to the correspondences tracking system.

(*Id.* at 73:6–17; 101:4–17.) She further testified that the central office also maintains "a computer database system which contains basic information regarding an appeal" and physical files that

> contain all of the physical paperwork and investigation paperwork . . ., which includes what we call a case history record, which is a summary of the grievance and our responses at each level, the grievance complaint itself, the IGRC response and appeal, superintendent response and

---

[8] Defense counsel objected to admitting these communications into evidence on the grounds that Ms. Schultz was not asked during her testimony about whether she authored these communications and I gave defense counsel one week to speak with Ms. Schultz to determine if she denied writing them. (*Id.* 122:3–128:24.) Defense counsel provided no response to me regarding whether Ms. Schultz denied writing those communications.

> appeal, and any investigation materials sent to us by the facility, and any additional investigation materials that we acquired through our investigation in our office.

(*Id.* at 76:15–77:24.) She testified that she could search the correspondence tracking system for any letters an incarcerated individual sent by mail asking about a grievance. (*Id.* at 79:17–23.) Ms. Seguin testified that she searched for letters received from Plaintiff related to the grievance at issue here utilizing CORC's correspondence tracking system and did not find any. (*Id.* at 84:14–85:7; 97:2–13.) She further testified that she searched the separate CORC database related to appeals and did not find any letters or grievances from around April 2021, when the alleged incident occurred. (*Id.* at 97:2–13.)

In response to Plaintiff's counsel's question regarding what recourse Plaintiff had if he had not heard anything about his grievance, Ms. Seguin testified that an inmate could write to the grievance supervisor advising that the grievance had not been answered within the required timeframe outlined in Directive 4040 and request that it be appealed to CORC. (*Id.* at 94:20–95:6.)

**Plaintiff's explanation for lost property**

Plaintiff testified that if he did not have carbon paper he would "always write [his] letters twice so [he] can have a copy for [himself] and send one to them." (*Id.* at 120:7–14.) He further testified that he also wrote the grievance at issue twice. (*Id.*)

Certain of Plaintiff's property was lost, including some documents related to this case, in December 2021 when he was transferred from Five Points to Wende Correctional Facility ("Wende"). (*Id.* at 129:17–130:14; 138:13–20; 155:13–157:8.) In

November 2021 DOCCS was going to transfer Plaintiff to Auburn so Plaintiff mailed some property to that facility. (*Id.* at 155:17–25.) However, instead of being transferred to Auburn he was transferred to Wende. (*Id.* at 155:23–156:3.) He later received the property he mailed to Auburn back but his remaining property that he had at Five Points was lost. (*Id.* at 155:23–156:6.) Included in the property he received back from Auburn were the two letters marked as Plaintiff's Exhibits 3 and 4. (*Id.* at 157:17–158:20; 159:8–13.)

Plaintiff testified that when his property did not come to him at Wende he "wrote to the superintendent of Five Points, [ ] filed claims to Five Points, [and he] filed grievances inside of Wende and claims to no avail." (*Id.* at 131:5–12; 158:23–159:5.) He also testified that before he left Five Points and was transferred to Auburn he filed grievance number 949, complaining that his mail was not going out. (*Id.* at 142:24–143:20; 144:7–9.)

## JURISDICTION

On March 13, 2026, the Honorable Elizabeth A. Wolford referred the issue of whether Plaintiff exhausted his administrative remedies under the PLRA to me for the issuance of a report and recommendation for disposition of the issue pursuant to 28 U.S.C. § 636(b)(1)(B). (Text Order, Mar. 17, 2026, ECF No. 52.)

## LEGAL STANDARDS

The PLRA directs as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step DOCS grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee.[9] Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (citations omitted). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011); *see also Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1857, 195 L.Ed.2d 117 (2016) ("mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). "[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003).

As an affirmative defense the party asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *Jones v. Bock,* 549 U.S. 199, 216, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007); *Cisse v. Bliss*, No. 9:23-CV-0697 (MAD/ML), 2025 WL 3964087, at *3 (N.D.N.Y. Aug. 1, 2025), *report and recommendation adopted,* No. 9:23-CV-0697

[9] The version of DOCCS Directive 4040 utilized in this case refers to this as the "Incarcerated Grievance Resolution Committee." (Def. Ex. 1, DOCCS Directive 4040 § 701.5(b)).

(MAD/ML), 2025 WL 3538850 (N.D.N.Y. Dec. 10, 2025); *Grant v. Kopp*, No. 917CV1224GLSDEP, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019), *report and recommendation adopted*, No. 917CV1224GLSCFH, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) ("Because the failure to exhaust administrative remedies is an affirmative defense and not a pleading requirement, *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016), the party asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence.")

Moreover, DOCCS has established the Inmate Grievance Program ("IPG") in accordance with Correction Law § 139. DOCCS's policies and procedures regarding the IPG are set forth in Part 701 of Title 7 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").[10] The grievance process begins with the filing of a complaint within 21 days of an alleged incident. DOCCS Directive 4040 § 705.1(a)(1). Typically, inmates file grievances with the grievance clerk. *Id.* However, if an inmate is housed in the SHU, and therefore segregated from the regular prison population, he may give the grievance complaint to a correction officer to file for him. *Id.* § 701.7(a)(3). Upon filing, the grievance clerk numbers and logs the grievances. *Id.* § 701.5(a)(2).

Ordinarily, there are three levels of review of a grievance. The first is by the

[10] For purposes of this Report and Recommendation I will only cite to DOCCS Directive 4040, as opposed to citing the NYCRR, as the witnesses reviewed and/or testified about the sections contained in the Directive. Further, Ms. Seguin testified that Defense Exhibit 1 is the most recent version of Directive 4040, dated January 20, 2016, and was the version of the Directive in place at the time of the incident alleged here. (*Id.* at 60:17–61:22.)

IGRC; the second is by the facility superintendent; and the third is by CORC. *Id.* §§ 701.1(c), 701.5. However, "harassment grievances"—those that involve "employee misconduct meant to annoy, intimidate or harm an inmate," *id.* § 701.2(e)—are subject to expedited first-level review by the facility superintendent, *id.* § 701.8.

When the grievance clerk identifies a harassment grievance, the clerk must forward the grievance to the superintendent on the same day that the grievance was filed. *Id.* § 701.8(b). If the grievance presents a bona fide harassment issue, then the superintendent must initiate an investigation, render a decision on the grievance, and inform the inmate of the decision within 25 days of receipt of the grievance. *Id.* § 701.8(d), (f). "If the Superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his [ ] grievance to CORC." *Id.* § 701.8(g); *see also id.* § 701.6(g)(2) (stating generally that matters not decided within designated time limits "may be appealed to the next step").

However, if the superintendent finds that the grievance would not represent a bona fide case of harassment he or she shall return it to the IGRC for normal processing. *Id.* 701.8(c). "If the grievant . . . wishes to appeal to the Superintendent [regarding the IGRC response], he [ ] must complete and sign the appeal section on the IGRC response form (Form #2131) and submit it to the grievance clerk within seven calendar days after receipt of the IGRC's written response." *Id.* § 701.5(c)(1).

**DISCUSSION**

At the evidentiary hearing, Defendants asserted that the IGRC's denial "was . . . sent by [ ] internal mail to Plaintiff on July 1st, 2021." (Tr. at 162:23–25.)

Defendants contended that Plaintiff did not submit a grievance appeal to the superintendent within seven days but instead the IGP office received an unsigned, undated IGRC grievance denial on November 3, 2021. (*Id.* at 163:6–17.) Defendants further contended that the "grievance clerk printed the cover sheet, but when trying to enter the data into the system before it was sent to the superintendent, he noticed that there is no date, no signature" and claimed that it was sent back to Plaintiff for his signature and to be dated. (*Id.* at 163:11–22.) Defendants asserted that Plaintiff did not resend the grievance appeal back to the IGP office with his signature and the date. (*Id.* at 163:23–25.) With respect to Plaintiff's assertions that he wrote to the superintendent of Five Points, CORC, and Ms. Schultz when he was transferred to Auburn, Defendants contended that during his deposition Plaintiff did not testify that he wrote to Ms. Schultz. (*Id.* at 163:25–164:13.) Further, Defendants asserted that at the evidentiary hearing, Plaintiff testified that he mailed the letters he wrote to the superintendent and CORC upon his return to Five Points but that during his deposition "he testified that he had handed those to an Officer whom he had issues with." (*Id.* at 164:13–18.) Defendants asserted that Plaintiff cannot provide any documents in support of his claims, aside from Plaintiff's Exhibits 3 and 4, because his property was lost in December 2021 and he "doesn't have any property claim filed after December 2021." (*Id.* at 165:14–21; 166:2–12; 167:21–168:23.) Defendants also asserted that Plaintiff testified at his deposition that he tried to retain Amy Agnew, Esq. in this case and "sent all documents" to her but then she sent the documents back to him. (*Id.* at 166:14–18.) Defendants contended that Plaintiff "made up a story

that he lost everything in December of 2021, but forgot that he sent all of the documents to Ms. Agnew in 2022 after claiming that he lost all of the property." (*Id.* at 167:11–16.) Defendants also contended the Ms. Seguin testified that "she checked the correspondence log books, she checked the mail system, but there is no mail that she received from Plaintiff with regard to the matters." (*Id.* at 165:21–25.)

Plaintiff's counsel argued that Five Points did not adhere to its grievance process with respect to Plaintiff's grievance. Plaintiff was very familiar with the grievance process, having filed 16 grievances and appealed them all the way to the final stage of CORC. (*Id.* at 169:4–13.) Plaintiff's counsel argued that this demonstrated that Plaintiff was very motivated to pursue his grievances and very organized with respect to the same. (*Id.* 169:12–21.) Plaintiff grieved many issues while incarcerated but an incident as serious as the one at issue, where Plaintiff wrote a detailed grievance about an alleged assault where there was physical corroboration such as fractured ribs and injuries to his face, is one that Plaintiff would have followed through with. (*Id.* at 169:22–170:13.)

Additionally, Plaintiff's counsel argued that the fact that the grievance was not designated a code 49 demonstrates that there was something wrong with the process and that "procedures were not being followed properly." (*Id.* at 170:21–171:15.) Further, Plaintiff's counsel asserted that it was suspicious that Plaintiff submitted his grievance on May 17, 2021, but the first record of it at Five Points was not until June 8, 2021, and there was no explanation for that amount of delay. (*Id.* at 171:15–23.) In addition, Plaintiff's counsel contended that Ms. Seguin testified that the IGRC

has 16 days after the filing of a grievance to hold a hearing and it appears that the hearing was held on July 1, 2026, which is about a month and a half after Plaintiff submitted his grievance and another example of how the process was not followed. (*Id.* at 172:5–10.)

Plaintiff testified that he never saw the response of the IGRC denying his grievance and that is why his signature is not on it. (*Id.* at 172:10–13.) Again, Plaintiff's counsel argued that Plaintiff was meticulous with his grievances so Defendants' assertion that he did not return his appeal of the IGRC's response denying his grievance until November, without a signature or date, does not make sense. (*Id.* at 172:13–21.) Plaintiff also wrote to Ms. Schultz asking about his grievance because he was not getting a response from anybody about it and Plaintiff submitted two letters to the Court showing that Ms. Schultz wrote back to him. (*Id.* at 172:21–173:11.) In addition, Plaintiff testified that he wrote to the superintendent and CORC while at Auburn and then wrote to them again, in addition to Ms. Schultz, when he returned to Five Points, demonstrating that he was following up on his grievance, that he wanted to appeal it, and that he followed the procedure the best that he could. (*Id.* at 175:17–176:10.)

I report and recommend that Defendants have not demonstrated, by a preponderance of the evidence, that Plaintiff failed to exhaust his administrative remedies. I find Plaintiff's testimony and version of the events surrounding the grievance at issue to be credible. It is uncontroverted that Plaintiff was very familiar with the grievance process and DOCCS Directive 4040, having successfully appealed

at least 16 grievances up to the CORC level at the time of the evidentiary hearing. In other words, he knew how to navigate the grievance process and had done so at Five Points at least eight times prior to the grievance in question. It stands to reason that Plaintiff knew exactly how to grieve his alleged assault in April 2021 at Five Points.

There is no dispute that Plaintiff's initial grievance was timely as the alleged incident occurred on April 30, 2021, and Plaintiff submitted his grievance on May 17, 2021, well within the 21-day time limit for filing it. Ms. Schultz testified that she sent the grievance to the superintendent to determine whether the grievance constituted a code 49. However, it is at this point that it appears that the grievance process set forth in Directive 4040 was not adhered to by Five Points, whether purposefully or negligently. Plaintiff received his grievance back a few days after he submitted it with the words "decline and return" written on top. Ms. Schultz did not know who had written this despite being the supervisor of the Five Points grievance program. He then resubmitted it with a cover letter to the IGRC.

Further, and confusingly, Ms. Schultz testified that after the superintendent or his/her designee signed a form on May 26, 2021, indicating that the grievance was not a code 49, and testified that she would have received it back within a few days, the grievance was not filed until June 8, 2021. Ms. Schultz could not provide an explanation for the 13-day delay between receiving it back from the superintendent and filing the grievance. Further, the IGRC held a hearing on July 1, 2021, and Plaintiff had a right to be present at that hearing yet he was never told about it and did not have the opportunity to attend it.

Then there is the issue of what was done with the IGRC response form denying Plaintiff's grievance. I find it credible that Plaintiff never saw this form in connection with the grievance at issue. Plaintiff had grieved many issues and knew how to appeal to the superintendent. Plaintiff only learned that the IGRC denied his grievance because he wrote numerous letters to Ms. Schultz asking about the status of his grievance until he got a response. Further, the only evidence Defendants presented that they sent this form to Plaintiff was Ms. Seguin's testimony that this is what *should* have been done. However, they had no proof that is what was actually done in this case. Further, Defendants assert that Plaintiff waited until November 3, 2021, to submit his unsigned, undated appeal. This does not make sense. Plaintiff knew the timeline applicable for submitting an appeal.

Defendants' assertions that they received no mail from Plaintiff asking about the status of his grievance and appeal are also suspect. Both Ms. Schultz and Ms. Seguin testified that the IPG office and CORC maintain correspondence with Plaintiff. And yet Plaintiff produced two pieces of correspondence from Ms. Schultz when she testified that no such communications existed. Moreover, Defendants were given the opportunity to provide evidence that the correspondence was not from Ms. Schultz. However, Defendants failed to provide any such evidence and, therefore, the facts are uncontroverted that Ms. Schultz corresponded with Plaintiff. Defendants' lack of correspondence from Plaintiff, in the face of evidence that such correspondence exists, calls into question Defendants' system of keeping track of correspondence sent to them.

Despite the procedural hurdles that were presented to Plaintiff in grieving his alleged assault it appears that Plaintiff adhered to Directive 4040 as best as possible. Ms. Seguin testified that if Plaintiff had not heard anything about his grievance for 20, 25, even 35 days after he submitted it he could write to the grievance supervisor—Ms. Schultz—advising that the grievance had not been answered within the required timeframe outlined in Directive 4040 and request that it be appealed. Plaintiff did write to Ms. Schultz, as evidenced by his testimony that he wrote to her within a week of arriving at Auburn and then again when he returned to Five Points, and also Plaintiff's Exhibits 3 and 4, asking repeatedly about the status of his grievance and indicating that he wanted to appeal it. While not considered an appeal, Plaintiff wrote to the Five Points superintendent and CORC indicating the same. Plaintiff's actions were not that of an inmate experienced in the grievance process choosing not to pursue his grievance and appeal. Instead, in the face of a process that appeared to be failing him he doggedly pursued his grievance and appeal to the best of his ability.

Finally, I find it credible that Plaintiff lost the majority of his property, including but not limited to, his correspondence and documents related to this case. His testimony was very clear that he mailed a bag of property, including some documents such as Plaintiff's Exhibits 3 and 4, to Auburn but then was transferred to Wende instead. While the other bags of property that he did not mail and that remained at Five Points were lost, the bag from Auburn was returned to him. Defendants' argument that Plaintiff made up the story about losing his documents is belied by his explanation as to why he still had the correspondence that I marked as

Plaintiff's Exhibits 3 and 4. Further, while Defendants also attack Plaintiff's explanation by arguing that he never filed a lost property claim, Plaintiff testified that he did. It appears that Defendants have misconstrued Plaintiff's testimony as they assert that Plaintiff did not file a claim when he only testified that he did not have a copy of his lost property claim. Defendants did not indicate if they looked into whether they have any record that Plaintiff actually filed a lost property claim.

## CONCLUSION

Based on the foregoing, I report and recommend to the District Judge that Defendants have failed to meet their burden of demonstrating, by a preponderance of the evidence, that Plaintiff failed to exhaust his administrative remedies.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS**[11] to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Loc. R. Civ. P. 72.

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

---

[11] **NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**: The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Wolford.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order**. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Local Rule of Civil Procedure 72(b), "[w]ritten objections ... shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection**.

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

IT IS SO ORDERED. Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED: October 2, 2026
Rochester, New York

MARK W. PEDERSEN
United States Magistrate Judge